### KAMPMANN v. MENDOZA.

(Court of Civil Appeals of Texas. San Antonio. Nov. 8, 1911. Rehearing Denied Dec. 6, 1911.)

1. APPEAL AND ERROR (§ 882*)—QUESTIONS REVIEWABLE—INVITED ERROR.

A party, requesting charges submitting issues after the court had prepared or given a charge submitting such issues, does not invite any error in submitting such issues, so as to prevent him from complaining of the refusal of a peremptory instruction in his favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

2. MASTER AND SERVANT (§§ 101, 102*)—INJURY TO SERVANT—OBLIGATION OF MASTER.

An employer need only use ordinary care, commensurate with the dangers of the work, to furnish his servant with safe premises and appliances; and an event which cannot reasonably be anticipated or avoided by ordinary care is not actionable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 180–184; Dec. Dig. §§ 101, 102.*]

3. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—NEGLIGENCE—BURDEN OF PROOF.

An employé, suing for a personal injury, has the burden of proving the negligence of the master; and the proof of an accident and injury will not alone justify a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

4. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR — NECESSITY — AMOUNT OF DAMAGES.

The extent of the injuries of a servant suing for personal injuries will not be considered on appeal, where the injuries were inflicted in the manner alleged in the petition, and there is no complaint directed to the amount of the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

5. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for injuries to a servant, operating an electrical ironer in a laundry, caused by an explosion, evidence *held* to show actionable negligence of the master in failing to maintain proper wiring and fuses.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

6. MASTER AND SERVANT (§ 208*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

An operator of an electrical ironer in a laundry does not assume the risk of injury from explosions caused by defective wiring.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*]

7. MASTER AND SERVANT (§ 235*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where the failure of a master to have an appliance in condition to guard a servant against an injury was not open and obvious, the servant, using the appliance and sustaining an injury, was not chargeable with knowledge of the defects; no duty devolving on him to examine and inspect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by Antonia Mendoza against Mrs. E. S. Kampmann. From a judgment for plaintiff, defendant appeals. Affirmed.

Jno. F. Onion, E. D. Henry, A. McCloskey, and Jno. F. Onion, Jr., for appellant. Anderson & Belden, Perry J. Lewis, and H. C. Carter, for appellee.

JAMES, C. J. The petition of Antonia Mendoza alleged in substance that defendant, in connection with the Menger Hotel, maintained an electric light plant and operated a laundry; that plaintiff was employed in said laundry, and was furnished by defendant with a certain electric ironer, and while plaintiff was in the discharge of her duty, using said ironer, the said ironer and its attachments, by reason of defendant's negligence, with a loud noise, which plaintiff believes to have been an explosion, flashed forth flames and sparks, which enveloped plaintiff, and seriously burned her right hand, wrist, and arm. She further alleged that defendant had negligently caused and permitted said ironer and its attachments to be in a defective and dangerous condition for use; that the electric wires which entered said ironer for the purpose of conveying electricity to it were dangerously, defectively, negligently, and improperly insulated, so that the wires came together, and thereby caused the said electrical explosion; that it was necessary in appliances of this kind, in order to prevent such explosions, for the defendant to maintain proper fuses, which would have avoided the disaster, but instead defendant negligently caused or permitted fuses to be used which were wholly unfit for the purpose, and in no way guarded said ironer against explosion; and that said acts of negligence caused and contributed to plaintiff's injuries, without any fault on her part, and prayed for damages, setting the same forth. Defendant pleaded general denial, contributory negligence, and assumed risk. A verdict was returned for plaintiff in the sum of $2,000.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

[1] The first assignment of error complains of the denial of a peremptory instruction for the defendant. Appellee undertakes to deny the right of appellant to have this assignment considered, for the reason, as appellant states, that defendant's requested charges Nos. 2, 3, and 4, which charges were given, asked to have the issues submitted. Inasmuch as the second of these charges sufficiently discloses that the court had already prepared or given its charge submitting the issues, we think it does not present a case of invited error. The assignment charges that there was no evidence adduced in the case which tended to show any liability on the part of the defendant. Under this assignment, appellant sets forth eight propositions of law, most of which embody indisputable principles—we might say, elementary principles.

[2, 3] We concede the principle that the employer's duty to the servant is to use ordinary care, commensurate, of course, with the dangers of the work, to furnish the servant with safe premises and appliances; that the burden is upon the servant to prove the negligence of the master; that proof of the accident and injury to the servant will, alone, not justify a recovery; that an event that cannot reasonably be anticipated or avoided by ordinary care is not actionable.

[4] The question to be determined from the record, as invoked by this assignment, is whether or not plaintiff received her injury through some act of negligence on the part of her employer, or her agents, which was the cause of the flash or explosion which injured her. The testimony is clearly sufficient to show that she was injured in that manner, and as there is no complaint directed to the amount of the verdict the extent of her injuries is not a proper subject of inquiry.

[5] Appellant states that the undisputed evidence showed that appellant had the standard make of wire, which was the best make, and approved by the Underwriters' Association; that these wires frequently break, and there is no way of telling when they may break; that when the insulation on the outside of the wire is good there is no possible way to tell by inspection the condition of the wire on the inside; that the insulation on the outside of the particular wire which broke was perfect; that casual inspections were made in the laundry three times a week, and special inspections of each wire twice a week, and that this was a sufficient inspection; and that the testimony of the six experienced electricians was undisputed to the effect that these wires broke frequently, and that there was no way to prevent it, even with the best make of standard wires made. Appellant insists that under the foregoing circumstances no negligence was shown.

It may be admitted that when a wire inside of its coating or insulation, which is in good condition, breaks, or is about to break, or becomes defective, no act of inspection, short of stripping the wire of this insulation, which would ruin it, would discover the defect. But negligence in regard to inspection of the wires for breaks and defects is not the only negligence that was relied on. It was alleged that in appliances of this kind it was necessary, in order to prevent explosions, for the defendant to maintain proper fuses, and that this was not done.

An electrician testified: "The wires brought down to this particular point to supply the current to this iron, there should be a fuse there to protect the wires supplying the current to this iron. This fuse should not be larger than the carrying capacity of the wire in amperes, and if the proper size fuse is put in this attachment, whatever it may be, then if the wires get together, or any portion of the apparatus becomes defective, then the fuse will melt out and stop the flow of the current; but if the fuse is too heavy and above the carrying capacity of the wire, then the apparatus would flash, burn, and sputter, and in some instances cause it to get red hot; the insulation will melt off up to the fuse, and if the fuse don't melt it will cause fire. The fuse will prevent all this, if the proper size; but if too large it invariably causes serious results. If they have no fuse at all, it is a very dangerous proposition, and liable to hurt somebody. * * * I said on direct examination, after hearing a discussion of the way this accident happened, it was caused by improper insulation of the wires, and that is my opinion. There is some confusion about whether you can erect or arrange an electric wire without any fuse at all. The fuse is put there as a safety device, so in case anything happened to the wire the fuse will melt, and the whole thing stops. If there be no fuse, or an improper fuse, that safeguard is denied." Another witness, also an electrician, testified in regard to the fuse: "It is put there for that purpose, and if it is a proper fuse we expect it to prevent the result of an explosion."

It seems to us that the very difficulty of ascertaining, through inspection, defects that may unexpectedly occur in the wires at any time, on account of their being inclosed in the insulation, and the high degree of danger that is ever present to employés, involved in such defects when they do arise, would suggest to any prudent person the adoption of available and known safeguards against the consequences of such a danger. According to the above testimony, the injury in question could not have happened from a defect in the wires, if a proper fuse had been in use in connection with the appliance; and that it did happen shows that no proper fuse was there to prevent it.

Appellant's theory of the cause of the accident is that the undisputed evidence was that the wire attached to the electric iron broke on the inside, forming a short current, and that an electric blaze was emitted, burning

appellee. The evidence shows that this consequence from that cause would not have been possible with a proper fuse. We know from the record that whether or not a fuse, or a proper fuse, was there was ascertainable by inspection. Mr. Orr, who was chief engineer in the hotel, testified to his frequent inspections of these appliances, and testified, among other things, that the fuse there was in good condition at the time; that it was in perfect condition. But Mrs. Cross, who was the managing laundress, testified: "I have had them tell me that there was not a fuse attached to the iron at all." We, therefore, conclude that there was proof of defendant's negligence. This disposes of the subject of the third assignment.

[6] It cannot be maintained, as appellant endeavors to do by the second assignment, that the risk of injury in this case was one ordinarily incident to plaintiff's employment.

[7] The fourth assignment is that the undisputed testimony shows that plaintiff was a first-class, experienced electric ironer, and that the causes of the accident were as discernible, open, and obvious to her as they were to her employer; that her opportunities and means of knowing that such an accident might happen were superior to those of defendant; and that the undisputed evidence shows no want of ordinary care on defendant's part; hence a new trial should have been granted. The testimony does not show that defendant's failure to have the appliance in condition to guard the employé against an injury of this kind was open and obvious. No duty devolved upon the employé to examine and inspect, and the principle is well established that the employé may rely on the master having performed his duty in reference to the safety of appliances in use, and is not required to anticipate the master's negligence. It would have been error upon the evidence for the court to have given a peremptory charge based upon such ground.

Judgment affirmed.